UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| CLAUDIA FLUHART, | : | Case No. 3:18-cv-141 |
| --- | --- | --- |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# DECISION AND ENTRY

## I. Introduction

Plaintiff Claudia Fluhart brings this case challenging the Social Security Administration's denial of her application for period of disability and Disability Insurance Benefits. She applied for benefits on May 30, 2014, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #6).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Kenyon's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since March 2, 2005. She was forty-six years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). She subsequently changed age category to a "person closely approaching advanced age" and then a "person of advanced age." *Id.* § (d), (e). She has a high school education. *See id.* § 404.1564(b)(4).

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #6, *PageID* #s 61-72), Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), and Plaintiff's Reply (Doc. #11). Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful

activity," in Social Security lexicon. 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

3

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff did not engage in substantial gainful employment during the period between her alleged onset date, March 2, 2005, and her date last insured, December 31, 2009.

Step 2: Through her date last insured, she had the severe impairments of rheumatoid arthritis, diabetes mellitus, arthritis of the left shoulder, and mild lumbosacral degenerative disc disease.

Step 3: Through her date last insured, she did not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Through her date last insured, her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … except: limited to occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; no forceful gripping of tools; frequent use of hands for handling and fingering; limited to occasional use of the left upper extremity for overhead reaching; no exposure to hazards such as unprotected heights or dangerous machinery; no concentrated exposure to extreme cold; and restricted to performing unskilled simple repetitive tasks."

Step 4: Through her date last insured, she was unable to perform any of her past relevant work.

Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 61-72). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 71-72.

V. **Discussion**

Plaintiff contends that the ALJ reversibly erred in evaluating the treating source's opinion, in interpreting raw medical data in functional terms, and in finding she was capable of frequent use of her hands for handling and fingering. The Commissioner maintains that substantial evidence supports the ALJ's decision.

    A. **Medical Opinions**

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length,

5

frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

ALJ Kenyon assigned "little weight" to the opinion of Plaintiff's treating physician, Dr. Terlecky. (Doc. #6, *PageID* #69). He concluded that Dr. Terlecky's assessment was "not consistent with the overall evidence of record." *Id.* Specifically, the ALJ found that Dr. Terlecky's opinion that Plaintiff could only lift ten pounds occasionally was not consistent with Dr. Stevens' and Dr. Tigyer's records indicating negative straight leg raises, normal strength, full range of motion, and intact sensation. *Id.* (citation omitted). The ALJ also determined that Dr. Terlecky's assessment that Plaintiff could only stand or walk for one hour is not supported by evidence—such as Dr. Tigyer's December 24, 2008 treatment note—demonstrating she had a normal gait. *Id.* (citation omitted).

In his evaluation of Dr. Terlecky's opinions, the ALJ did not address whether his opinions were entitled to controlling weight under the treating physician rule. Moreover,

6

the ALJ did not discuss either condition of the rule—whether Dr. Terlecky's opinions are well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the case record. Instead, the ALJ improperly reduced the two-step evaluation procedure mandated by the Regulations into solely consideration of the factors—specifically, the "supportability" and "consistency" factors. *See* 20 C.F.R. §404.1527(c)(1)-(6). This constitutes error because the "supportability" and "consistency" factors, along with the others listed in the Regulations, "are properly applied only *after* the ALJ has determined that a treating-source opinion will not be given controlling weight." *Gayheart*, 710 F.3d at 376 (emphasis added) (citation omitted). The ALJ's focus on the factors "hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Gayheart*, 710 F.3d at 377 (citing *Wilson,* 378 F.3d at 544).

The ALJ's failure to address the treating physician rule conflicts with the requirement that the ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Wilson*, 378 F.3d at 544-45 (citing *Halloran v. Barnhart,* 362 F.3d 28, 32-33 (2d Cir. 2004)) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."). The reason-giving requirement is particularly important for claimants:

7

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied."

*Wilson*, 378 F.3d at 544-45 (quoting *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999)).

By collapsing the analysis of Dr. Terlecky's opinions into one step, the ALJ failed to evaluate his opinions under the correct legal criteria. "Because the reason-giving requirement exists to 'ensur[e] that each denied claimant receives fair process,' we have held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley*, 581 F.3d at 407 (quoting *Rogers*, 486 F.3d at 243).

Additionally, substantial evidence does not support the ALJ's reasons for rejecting Dr. Terlecky's opinions. "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)) (internal citations and quotation marks omitted). Although the ALJ cites to normal findings in Dr. Tigyer's and Dr. Steven's treatment notes, he overlooks or ignores their findings that support Dr. Terlecky's opinions. For instance, although Dr. Tigyer noted in December 2008 that Plaintiff had a normal gait, he also indicated that

8

Plaintiff had tenderness to palpation over the thoracic and lumbar paraspinal/facet joints as well as restricted range of motion. (Doc. #6, *PageID* #1525). Further, an MRI of Plaintiff's thoracic spine revealed multilevel mild disc bulging. *Id.* at 1525, 1528. An MRI of her lumbar spine showed multilevel disc disease with some facet hypertrophy, most prominent at the L4-L5 level. *Id.* at 1525, 1529. At the L4-L5 level, there is diffuse disc bulge noted with ligamentum flavum thickening and facet hypertrophy causing moderate lateral recess narrowing and mild anterior sac effacement as well as mild central canal stenosis. There is moderate inferior foraminal narrowing. There is likely some contact and slight effacement of the bilateral L5 nerve roots and lateral recesses. *Id.* Earlier in December, Dr. Tigyer noted that examination of Plaintiff's lumbosacral spine revealed restricted range of motion. *Id.* at 1526. She was tender to palpation over the lower thoracic spine and lumbar spine. And, although her gait/stance and heel-toe were normal, they were also painful. *Id.* She had tenderness to palpation over the paraspinals. She had a positive straight leg raise test on the left and pain at 80-90 degrees bilaterally. *Id.* at 1527.

Likewise, Dr. Stevens' treatment notes reflect several objective findings that the ALJ appears to disregard. For instance, in September 2008, Dr. Stevens indicated that an x-ray of Plaintiff's AP and lateral left foot revealed severe erosive disease at the head of the fifth metatarsophalangeal. *Id.* at 1284. He also noted paraspinal muscle spasms. *Id.* at 1276. In October 2008, Dr. Stevens noted that Plaintiff had synovitis of the hands and knees, and metatarsal tenderness to palpation. *Id.* at 1275. Further, bloodwork showed a positive anti-CCP antibody and rheumatoid factor. *Id.* He assessed erosive seropositive

9

rheumatoid arthritis for the past twelve years. *Id.* This evidence, taken together, supports and is consistent with and supports Dr. Terlecky's opinions.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[1]

**B.    Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or

---

[1] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's non-disability finding is vacated;

2. No finding is made as to whether Plaintiff Claudia Fluhart was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case is terminated on the Court's docket.

Date: February 21, 2020					*s/Sharon L. Ovington*
							Sharon L. Ovington
							United States Magistrate Judge